UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

GEOVANNI AYUSO,
    *Plaintiff*,

v.

SCOTT SEMPLE *et al.*,
    *Defendants*.

No. 3:18-cv-116 (JAM)

**INITIAL REVIEW ORDER PURSUANT TO 28 U.S.C. § 1915A**

Plaintiff Geovanni Ayuso is a sentenced prisoner in the custody of the Connecticut Department of Correction. He has filed this lawsuit alleging a violation of his constitutional rights in connection with a disciplinary hearing and his conditions of confinement. Based on my initial review pursuant to 28 U.S.C. § 1915A, I conclude that Ayuso has failed to allege a plausible claim for a violation of his due process rights but that he has alleged a plausible claim against two of the defendants for violation of his right to be free from cruel and unusual punishment.

**BACKGROUND**

Ayuso is incarcerated at the MacDougall-Walker Correctional Institution. Doc. #8. He brings this suit pursuant to 42 U.S.C. § 1983 against the following 11 defendants in their individual and official capacities: Scott Semple, Edward Maldonado, Christine Whidden, John Aldi, William Mulligan, William Faneuff, Warden Rodriguez, Lieutenant Congelos, Lieutenant Roy, Correctional Officer Legassy, and Correctional Officer Michaud.[1] He claims that these defendants violated his rights to due process and subjected him to unconstitutional conditions of confinement.

---

[1] Ayuso has named "Scott Simple" as a defendant, when in fact the defendant former commissioner's name is "Scott Semple." The Court uses the correct spelling. The Clerk of Court is requested to amend the docket case caption to reflect the correct spelling of defendant's name.

1

The following allegations as alleged in the complaint are accepted as true solely for the purposes of the Court's initial review. On May 5, 2017, after spending nine years in security risk group (SRG) segregation, Ayuso renounced his membership in the Almighty Latin King Queen Nation gang (Latin Kings), and he was released from segregation and placed in general population at MacDougall. Doc. #1 at 7-8 (¶¶ 18-21).

On August 10, 2017, defendant Legassy informed Ayuso that he would be conducting a random cell search and told Ayuso, "you're going to SRG tonight Prieto." *Id.* at 8 (¶¶ 22, 24). Legassy did not target any other cells during his random shakedown. *Ibid.* (¶ 23). Several hours later, an officer placed Ayuso in the restrictive housing unit (RHU) at MacDougall. *Id.* (¶ 25). Before the shift change that day, a correctional officer delivered a disciplinary report to Ayuso. *Ibid.* (¶ 26).

This disciplinary report was written by Legassy and stated that when he "shook down O-40 cell" that morning, he "found SRG Latin King materials inside an envelope addressed to Inmate Ayuso, Giovanni." Doc. #1 at 71. Legassy further stated that "[t]he bag the envelope was found in was also found in Inmate Ayuso's storage locker cell," and that the Latin King materials "also had the name Prieto written on the back of them." *Ibid.* "Inmate Ayuso's known alias is Prieto." *Ibid.* Defendant Roy signed off on the disciplinary report as the custody supervisor/unit manager. *Ibid.*

In his role as a disciplinary investigator, defendant Michaud met with Ayuso in RHU to discuss the SRG affiliation disciplinary report. *Id.* at 9 (¶ 29).[2] Michaud informed Ayuso that he would need to see a disciplinary hearing officer (DHO) about his disciplinary report. *Ibid.* (¶ 30).

---

[2] The complaint confusingly alleges that this meeting took place on August 8, 2017, which was two days *before* the date that Ayuso alleges when the search of his cell occurred and when the disciplinary report issued. I will assume that this date discrepancy is a scrivener's error and that the meeting with Michaud took place sometime soon after the disciplinary report issued.

Ayuso refused an advocate, but told Michaud that, per the requirements of the DOC Administrative Directive, he wanted to see the evidence supporting the SRG charge at least 24 hours before the hearing and to present a written statement in his defense. *Id.* at 9 (¶¶ 31-32). But Michaud refused to allow Ayuso to review the alleged evidence or provide a statement for his defense. *Id.* at 10 (¶ 35).

On August 25, 2017, Ayuso appeared for a first hearing before a DHO (one who is not named as a defendant in this action). *Ibid.* (¶ 37). After Ayuso expressed his concern that he had not been given an opportunity to review the evidence, the DHO granted a continuance. *Ibid.* (¶¶ 38-40). The DHO said she would forward the evidence to Michaud to give to Ayuso to prepare his defense. *Id.* at 10-11 (¶ 41).

On August 31, 2017, defendant DHO Congelos convened a disciplinary hearing on the basis of the disciplinary report. *Id.* at 11 (¶ 42). After Ayuso told Congelos that Michaud had never given him the evidence against him to review, Michaud placed two sheets of paper in front of him and said, "There's your evidence Prieto." *Ibid.* (¶ 44). At the hearing, Congelos then found Ayuso guilty despite the fact that Ayuso denied that he wrote or possessed the Latin King materials. *Ibid.* (¶¶ 45-47).

Congelos told Ayuso he was going to Phase One of SRG Segregation, and he did not advise Ayuso of his right to appeal. *Ibid.* (¶¶ 48-49). According to Ayuso, Congelos was not a member of the SRG review committee for initial phase placement, and he exceeded his duties and authority by directing that Ayuso be placed in the SRG Segregation unit. *Id.* at 12 (¶¶ 50-52).

On September 12, 2017, Ayuso was transferred to SRG Segregation at Northern Correctional Institution, which is a supermax facility that houses Phase One of SRG Segregation.

3

*Id.* at 13 (¶¶ 54, 56). At Northern, Ayuso was required to have his hands cuffed behind his back during recreation time, and he promptly lodged an inmate complaint on September 13 that this caused him pain. *Ibid.* (¶ 57); *id.* at 72 (inmate request form). The complaint was lodged with defendant Faneuff but Faneuff did not respond. *Ibid.* (¶¶ 57-58).

On September 26, 2017, Ayuso filed a level 1 grievance, stating that he was required to wear handcuffs each time he went outside to recreate for an hour from Monday to Friday and that the handcuffs were causing such extreme pain to his back and shoulders that he could not sleep. *Id.* at 13, 14 (¶¶ 59, 62-63); *see also id.* at 73. As to exercising inside his cell without handcuffs, Ayuso said that this would disturb his cell mates and surrounding cells. *Id.* at 14-15 (¶¶ 66, 68); *see also id.* at 73. Faneuff did not respond to Ayuso's level 1 grievance. *Id.* at 13 (¶ 60).

According to Ayuso, he was housed in Phase One of SRG Segregation until December 5, 2017, and he suffered every day. *Id.* at 14 (¶ 64). He alleges in substance that prison officials showed callous indifference to his need for exercise by requiring him to wear painful handcuffs during outside recreation periods. *Id.* at 14-16 (¶¶ 67-72).

After being transferred back to MacDougall-Walker, he filed a complaint about his back pain on December 12, 2017, and then was seen by a nurse on December 17, 2017, who in turn placed him on a list to see the facility doctor for further evaluation. *Id.* at 16-17 (¶¶ 74-75). On January 9, 2018, a doctor saw Ayuso and determined that the pain was serious enough for pain medication. *Id.* at 17 (¶ 76). Ayuso was prescribed Ibuprofen but alleges that he continued to suffer. *Ibid.* (¶¶ 77, 79).

Ayuso filed his lawsuit on January 19, 2018. He names each defendant in their individual and official capacity. Beyond allegations concerning the actions of particular defendants as

described above (Lagassy, Roy, Michaud, and Congelos), the complaint describes the role of several supervisory defendants. It alleges that defendant Semple was the Commissioner of DOC with responsibility for the administration and supervision of all DOC facilities. *Id.* at 3 (¶ 5). Defendant Maldonado was the District Two Administrator of DOC and responsible for the supervision of Northern and MacDougall-Walker, as well as responsible for responding to SRG-related complaints. *Ibid.* (¶ 6). Defendant Whidden was the Director of Security for DOC with responsibility to review all SRG designations in all DOC facilities. *Ibid.* (¶ 7). Defendant Aldi was the counselor supervisor and coordinator of all operations within SRG Segregation and legally responsible for reviewing all SRG related disciplinary reports as well as for reviewing all SRG Segregation prisoners every 90 days and for six-month determination reviews. *Id.* at 4 (¶ 8). Defendant Mulligan was the warden at MacDougall with supervisory responsibility for the entire facility. *Ibid.* (¶ 9). Defendant Faneuff served as warden at Northern from January to October 2017, while defendant Rodriguez was warden at Northern from October 2017 through December 2017. *Id.* at 4-5 (¶¶ 10-11).

The complaint lists several legal claims. The first claim seeks a general declaratory judgment "concerning the existence, nature, scope and severity of the violation of the plaintiff's rights under the U.S. Constitution." *Id.* at 18 (¶ 82).

The second claim alleges a violation of the Eighth Amendment for deliberate indifference to Ayuso's safety and medical needs. It alleges that he was deprived of all meaningful exercise and subjected to painful handcuffing. *Id.* at 18-19 (¶¶ 85-86).

The third claim alleges a violation of the Due Process Clause of the Fourteenth Amendment. It alleges that defendants Roy, Congelos, Michaud, and Legassy engaged in the following actions: (1) denied Ayuso an opportunity to timely review the evidence and prepare a

defense against the disciplinary report, (2) subjected him to transfer to SRG Segregation by an officer who was not a member of the SRG review committee for initial phase placements, and (3) failed to advise Ayuso of his right to appeal his SRG designation. *Id.* at 19 (¶ 89). It additionally alleges that "by their policies, practices and acts" the supervisory defendants Semple, Maldonado, Whidden, Aldi, Mulligan, Faneuff, and Rodriguez violated Ayuso's procedural and constitutional rights. *Id.* at 19-20 (¶ 90).

The fourth claim revisits the Eighth Amendment claim as alleged in the second claim but alleges liability against supervisory defendants including Semple, Maldonado, Whidden, Aldi, Mulligan, Faneuff, and Rodriguez. Ayuso alleges that they were aware of prior litigation (not further described or identified) concerning the handcuff policy at Northern and the damage it caused to prisoners. *Id.* at 20 (¶ 93).

The fifth claim alleges a general failure-to-supervise claim against the supervisory defendants Semple, Maldonado, Whidden, Aldi, Mulligan, Faneuff, Rodriguez, Congelos, and Roy. It alleges that they failed to supervise and enforce DOC policies as well as to discipline other officers for violation of Ayuso's rights. *Id.* at 21 (¶¶ 95-97).

The complaint seeks declaratory relief as well as injunctive relief for Ayuso to be removed from SRG Segregation and placed in general population. *Id.* at 21-22. It also seeks compensatory and punitive damages. *Id.* at 22-23.

## DISCUSSION

Pursuant to 28 U.S.C. § 1915A, the Court must review a prisoner's civil complaint against a governmental entity or governmental actors and "identify cognizable claims or dismiss the complaint, or any portion of the complaint, if the complaint—(1) is frivolous, malicious, or fails to state a claim upon which relief may be granted; or (2) seeks monetary relief from a

6

defendant who is immune from such relief." If the prisoner is proceeding *pro se*, the allegations of the complaint must be read liberally to raise the strongest arguments that they suggest. *See Tracy v. Freshwater*, 623 F.3d 90, 101–02 (2d Cir. 2010).

In recent years, the Supreme Court has set forth a threshold "plausibility" pleading standard for courts to evaluate the adequacy of allegations in federal court complaints. A complaint must allege enough facts—as distinct from legal conclusions—that give rise to plausible grounds for relief. *See, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Notwithstanding the rule of liberal interpretation of a *pro se* complaint, a *pro se* complaint may not survive dismissal if its factual allegations do not meet the basic plausibility standard. *See, e.g.*, *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015).

### *Procedural due process*

Ayuso alleges that his rights to procedural due process were violated in connection with the disciplinary hearing that led to his re-designation to SRG status and his eventual transfer to Northern, where he was subject to highly restrictive conditions of confinement that did not allow him to exercise outside his cell without handcuff restraints. The standard analysis for a procedural due process claim "proceeds in two steps: a court first ask[s] whether there exists a liberty or property interest of which a person has been deprived, and if so . . . whether the procedures followed by the State were constitutionally sufficient." *Swarthout v. Cooke*, 562 U.S. 216, 219 (2011) (*per curiam*).

I will start with whether Ayuso was deprived of a liberty interest. In the prison context, which involves persons whose liberty interests have already been severely restricted because of their confinement in a prison, a prisoner plaintiff cannot show a cognizable deprivation of

"liberty" unless he can show that he was subject to no less than an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995). Following *Sandin*, the Second Circuit has explained that courts must examine the actual punishment received, as well as the conditions and duration of the punishment. *See Davis v. Barrett*, 576 F.3d 129, 133–34 (2d Cir. 2009) (*per curiam*); *Palmer v. Richards*, 364 F.3d 60, 64 (2d Cir. 2004). Typically, restrictive confinements of fewer than 101 days do not implicate a liberty interest. *See Davis*, 576 F.3d at 133; *see also Wilkinson v. Austin*, 545 U.S. 209, 224 (2005) (prisoners have liberty interest against indefinite assignment to supermax facility).

Viewing the facts in the light most favorable to Ayuso, I conclude for initial review purposes only that he has plausibly alleged a sufficient deprivation to give rise to a constitutionally protected liberty interest. As a result of the disciplinary proceedings, he was removed from general population and subject to restrictive housing at MacDougall from August 10 to September 26, 2017, and then at Northern from September 26 to December 5, 2017—a total period of 117 days. *See Myers v. Semple*, 2018 WL 3553336, at *4 (D. Conn. 2018) (concluding for purposes of initial review order that 180-day "placement in the SRG Program" amounted to "an atypical and significant hardship in relation to the ordinary incidents of prison life").

Having determined that Ayuso has alleged a deprivation of a liberty interest, I turn to evaluating whether he has alleged that he did not receive the procedures that he was constitutionally due. The procedural protections that are due to a prison inmate facing a disciplinary hearing are not as expansive as the due process protections for a criminal defendant standing trial. *See Wolff v. McDonnell*, 418 U.S. 539, 556 (1973); *Sira v. Morton*, 380 F.3d 57, 69 (2d Cir. 2004). Thus, for example, a prison inmate does not have the right to counsel or to

confront witnesses against him. *See Sira*, 380 F.3d at 69 (citing *Wolff*, 418 U.S. at 567–70). On the other hand, an inmate must be given "advance written notice of the charges against him; a hearing affording him a reasonable opportunity to call witnesses and present documentary evidence; a fair and impartial hearing officer; and a written statement of the disposition, including the evidence relied upon and the reasons for the disciplinary actions taken." *Ibid.* (citing *Wolff*, 418 U.S. at 563–67). Moreover, there must be at least some evidence to support the findings made in the disciplinary hearing. *See Washington v. Gonyea*, 538 F. App'x 23, 25 (2d Cir. 2013). To the extent that a prisoner might complain about the absence of additional procedures at a prison disciplinary hearing, the Second Circuit has "stressed that, in the context of such disciplinary proceedings, the only process due an inmate is that minimal process guaranteed by the Constitution, as outlined in *Wolff*." *Rodriguez v. Lindsay*, 498 F. App'x 70, 71 (2d Cir. 2012) (internal quotations omitted).

As noted above, Ayuso alleges three specific violations of his procedural rights. Doc. #1 at 19 (¶ 89). First, he alleges that Michaud denied him an opportunity to timely review the evidence and prepare a defense against the disciplinary report. But Ayuso has attached to his complaint the disciplinary report that describes the basis for a disciplinary hearing, and his signature on this report reflects that he received a copy of the report on August 10, 2017. Doc. #1 at 71. Ayuso was aware of the basis for the charge against him, and he was also granted a continuance to prepare for the disciplinary hearing, as well as the right to make a statement in his defense at the hearing. Doc. #1 at 10-11 (¶¶ 40, 46). To the extent that Ayuso complains that he did not otherwise have timely advance access to additional more evidence that was used against him, he does not describe what this evidence was or how advance access would have made any

9

difference to the outcome of the disciplinary proceeding. Nor does he describe what defense he would have presented or how he was prevented from doing so.

Second, Ayuso alleges that he was not advised of his right to appeal from the adverse disciplinary finding. But "a right to appeal disciplinary convictions is not within the narrow set of due process rights delineated in *Wolff*." *Potts v. Senato*, 2006 WL 581255, at *2 (D. Del. 2006), and "it is widely recognized that an inmate has no right to appeal a disciplinary board's decision." *Westbrook v. Koch*, 2017 WL 2589963, at *6 (E.D. Va. 2017); *see also McCain v. Jackson*, 2019 WL 2075959, at *5 (S.D. Ohio 2019) ("There is no constitutional right to appeal from a disciplinary decision."). Nor does *Wolff* recognize any further constitutional requirement that a prisoner who is subject to discipline be formally advised by the disciplinary hearing officer of his right to file an appeal from an adverse disciplinary finding.

Lastly, Ayuso alleges that he was subject to SRG Segregation at the behest of DHO Congelos, who was not himself a member of the SRG review committee for initial phase placements. But Ayuso does not dispute that Congelos was a disciplinary hearing officer, and the Due Process Clause does not require that any particular person serve as a member of the SRG review committee. In addition, the disciplinary report expressly charged Ayuso with a violation of the Security Risk Group Affiliation, *see* Doc. #1 at 71, and according to the Administrative Directive that Ayuso has attached to his complaint, "[a]n inmate shall also be designated a Security Risk Group Member when the inmate is found guilty of the charge of Security Risk Group Affiliation" under the prison's code of penal discipline. Doc. #1 at 28 (quoting Administrative Direction 6.14 (¶ 7(B)). Moreover, to the extent that Ayuso complains that Congelos' involvement in his designation to SRG Segregation was a violation of any internal prison policies, the violation of internal prison policies does not *per se* establish a violation of a

prisoner's constitutional right to due process. *See Harris v. Taylor*, 441 F. App'x. 774, 775 (2d Cir. 2011) (non-compliance with state law or prison administrative directive does not by itself establish a due process violation under § 1983).

### *Deliberate indifference to safety and medical needs*

The Eighth Amendment to the U.S. Constitution protects against the infliction of cruel and unusual punishment. U.S. Const. Amend. VIII. The Supreme Court has long recognized that prison officials violate the Eighth Amendment if they are deliberately indifferent to a substantial risk of serious harm or to the serious medical needs of a sentenced prisoner. *See Farmer v. Brennan*, 511 U.S. 825, 828 (1994); *Estelle v. Gamble*, 429 U.S. 97, 104 (1976).

A deliberate indifference claim under the Eighth Amendment has two requirements. First, the prisoner must allege that he was subject to an objectively serious risk of harm or serious medical need, as distinct from what a reasonable person would understand to be a minor risk of harm or minor medical need. Second, the prisoner must allege that a defendant prison official acted not merely carelessly or negligently but with a subjectively reckless state of mind reflecting actual awareness of a substantial risk that serious harm to the prisoner would result. *See, e.g., Spavone v. N.Y. State Dept. of Corr. Servs.*, 719 F.3d 127, 138 (2d Cir. 2013); *Hilton v. Wright*, 673 F.3d 120, 127 (2d Cir. 2012).

Ayuso alleges that prison officials were deliberately indifferent to his safety and serious medical needs during the time that he was at Northern Correctional Institution from September 26 to December 5, 2017. During that time he was allegedly denied an opportunity to engage in physical exercise by reason of his confinement in a small cell and by reason of his being required to wear painful handcuffs behind his back for the one hour per day from Monday to Friday when he was permitted outside of his cell.

11

In *Gardner v. Murphy*, 613 F. App'x 40 (2d Cir. 2015), the Second Circuit affirmed a denial of summary judgment for prison officials arising from what appears to be the same restrictive exercise and handcuffing policy at Northern Correctional Institution. *See also Daniels v. Murphy*, 2014 WL 3547235 (D. Conn. 2014) (same). In light of this precedent, I conclude that Ayuso has alleged sufficient facts for now to allow an Eighth Amendment claim to proceed.

In terms of which of the named defendants is responsible for the allegedly unconstitutional conditions imposed on Ayuso at Northern, I will allow Ayuso's claim to proceed against the two defendants who allegedly served as wardens at Northern Correctional Institution while Ayuso was there: Faneuff and Rodriguez. Apart from these two defendants, Ayuso does not otherwise allege non-conclusory facts to show that any other defendant was personally involved or responsible for the specific policy about which he complains at Northern Correctional Institution.

## CONCLUSION

For the reasons set forth above, the Court allows Ayuso's Eighth Amendment claim for deliberate indifference to safety and serious medical needs to proceed against defendants Faneuff and Rodriguez in their individual capacities only. All other claims and defendants are dismissed pursuant to 28 U.S.C. § 1915A(b) for failure to allege facts that give rise to plausible grounds for relief.

The Court enters the following orders:

(1)     **The Clerk shall** verify the current work addresses of defendants Faneuff and Rodriguez, mail a waiver of service of process request packet to these two defendants at the address provided within **twenty-one (21) days** of this Order, and report to the Court on the status of those waiver requests on the thirty-fifth day after mailing. If either defendant fails to return the

waiver request, the Clerk shall make arrangements for in-person service by the U.S. Marshals Service on the defendant in his or her individual capacity and the defendant shall be required to pay the costs of such service in accordance with Federal Rule of Civil Procedure 4(d).

(2) **The Clerk shall** send plaintiff a copy of this Order.

(3) **The Clerk shall** send a courtesy copy of the Complaint and this Order to the Connecticut Attorney General and the Department of Correction Office of Legal Affairs.

(4) Defendants Faneuff and Rodriguez shall file his response to the complaint, either an answer or motion to dismiss, within **sixty (60) days** from the date the waiver forms are sent. If they choose to file an answer, they shall admit or deny the allegations and respond to the cognizable claim recited above. They also may include any and all additional defenses permitted by the Federal Rules.

(5) Discovery, pursuant to Federal Rules of Civil Procedure 26 through 37, shall be completed by **January 14, 2020**. Discovery requests need not be filed with the Court.

(6) All motions for summary judgment shall be filed by **February 14, 2020**.

(7) Pursuant to Local Civil Rule 7(a), a nonmoving party must respond to a dispositive motion within twenty-one (21) days of the date the motion was filed. If no response is filed, or the response is not timely, the dispositive motion can be granted absent objection.

(8) If plaintiff changes his address at any time during the litigation of this case, Local Court Rule 83.1(c)2 provides that plaintiff MUST notify the Court. Failure to do so can result in the dismissal of the case. Plaintiff must give notice of a new address even if he is incarcerated. Plaintiff should write PLEASE NOTE MY NEW ADDRESS on the notice. It is not enough to just put the new address on a letter without indicating that it is a new address. If plaintiff has more than one pending case, he should indicate all of the case numbers in the notification of

change of address. Plaintiff should also notify the defendant or the attorney for the defendant of his new address.

(9) Plaintiff shall utilize the Prisoner Efiling Program when filing documents with the Court. Plaintiff is advised that the Program may be used only to file documents with the court. As local court rules provide that discovery requests are not filed with the Court, discovery requests must be served on defendant's counsel by regular mail.

It is so ordered.

Dated at New Haven this 14th day of June 2019.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge